UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MYTAYARI KEYES<br><br>                            Plaintiffs,<br><br>-against-<br><br>THE CITY OF NEW YORK, et al.,<br><br>                            Defendants. | MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH<br><br>18-cv-4712(JPO) |

## PRELIMINARY STATEMENT

Plaintiff Mytayari Keyes raises claims under 42 U.S.C. §1983 and state law against the City of New York, the New York City Police Department, and Police Officers Manuel Silva, Peter Cassidy, and Michael Looney arising from his March 1, 2017 arrest and subsequent prosecution. Plaintiff has served Assistant District Attorneys Tania Fiedorek and Jeffrey Levinson – both of whom are non-parties – with subpoenas calling for their appearance at a deposition. The prosecutors now move to quash because the subpoenas seek information that is outside the scope of Federal Rule of Civil Procedure ("FRCP") 26, impose an undue burden, and implicate the attorney work product privilege.

## PROCEDURAL HISTORY

The operative complaint, filed on June 12, 2018, raises claims of false arrest, malicious prosecution, and intentional infliction of emotion distress against the individually-named police officer defendants and claims of negligent hiring, training and supervision against the City of New York and its Police Department.

Plaintiff's civil suit is presently in discovery. On August 20, 2019, Plaintiff served the New York County District Attorney's Office with subpoenas addressed to Assistant District Attorneys

1

("ADA") Tania Fiedorek and Jeffrey Levinson calling for their testimony at a deposition. On August 20, 2019, the undersigned contacted Plaintiffs' Counsel to learn the basis for the depositions and to seek time to obtain the District Attorney's file for review. Plaintiff's Counsel was advised that a preliminary search of the case file indicated that neither ADA Fiedorek nor ADA Levinson was the trial assistant and that neither individual handled the matter during the pendency of the prosecution. Counsel for plaintiff, Henry Bell, consented to additional time, expressly stating that compliance the following week would not be expected.

On August 27, 2019, the undersigned spoke to Mr. Bell again in an attempt to understand Plaintiff's purported need to depose two prosecutors with no apparent involvement in the criminal matter underlying his claims in this civil suit. ADA Fiedorek appears to be the individual who drafted the criminal court complaint. ADA Levinson was formerly a criminal court supervisor who appeared briefly at the request of the trial assistant on an issue raised by defense counsel, Andrew Stengel (also Plaintiff's counsel on the instant matter). Mr. Bell stated that Plaintiff required the depositions of the prosecutors to discover the policies and practices of the District Attorney's Office regarding the disclosure of adverse credibility determinations made against police officers who may be involved in a defendant's arrest. Plaintiff's Counsel claimed a need to discovery whether, as a result of their involvement in Plaintiff's case, this office had made an assessment as to whether the named police were or were not credible.[1] Despite attempts to clarify whether Plaintiff sought discovery

---

[1] Of note, Plaintiff's Counsels are actively litigating an Art 78 petition, wherein they are seeking access to information the New York County District Attorney's Office collects and assesses about potential police misconduct -- in service of its obligation to disclose information -- that may bear on a witness' credibility. See Stengel v Vance + Roque, Civil Index No. 159740/2018, pending before the Honorable Franc Perry. Through that Article 78 proceeding, Plaintiff's Counsels seek, as they do here, namely, information relating to whether and how this Office identifies police officers who may be the subject of adverse credibility assessments. As such, it appears Plaintiff's Counsels seek to use Mr. Keyes' litigation to execute an end run around the state court litigation. This seems all the more clear, given the lack of relevance the information has to Plaintiff's claims before this Court. Even if this court were to find prosecutors' testimony has any relevance, as discussed below, the subpoenas implicate privileged attorney work product privilege and further, subject the prosecutors to undue burden.

relevant to issues in this case, and not just the prosecutors' opinions, Mr. Bell made plain that a resolution was not likely and terminated the conversation. An additional call and email inquiry, sent by the undersigned on August 27, 2019, were not returned. On August 28, 2019, the non-party prosecutors filed a letter with the Court seeking time to file a Motion to Quash both subpoenas.

## FACTUAL BACKGROUND

On or about March 1, 2017, in the vicinity of West 44th Street and 7th Avenue, Police Officer, Peter Cassidy observed Plaintiff as he appeared to be rubbing his hand against a woman's buttocks, using an up-and-down motion. [2] Police Officer Manuel Silva also observed Plaintiff rubbing his hand against a second woman's buttocks, again in an up and down motion. [3] Plaintiff was arrested and a criminal court complaint was drafted. Assistant District Attorney Tania Fiedorek was one of several assistants during that shift assigned to write up cases in the Early Case Assessment Bureau (ECAB). [4] Plaintiff was thereafter arraigned and charged, by misdemeanor criminal complaint, with Forcible Touching under Penal Law 130.52(1) and Sexual Abuse in the Third-Degree Penal Law 130.55.[5] On or about January 31, 2018, the case proceeded to a bench trial before the Honorable L. Frank, during which both named police officers testified, at the conclusion of which the Plaintiff was found not guilty. ECF 4 at ¶ 23. At one point during the trial, the trial assistant requested her immediate supervisor, ADA Jeffrey Levinson's appearance. ADA Levinson appeared on the record beside the junior assistant. ADA Levinson's only statements pertaining to that matter are contained in the trial transcript, which Plaintiff possesses. The transcript held by Plaintiff, reflects that ADA Levinson only heard about the issue before the Court through the trial assistant. ADA Levinson had

---

[2] Criminal Court Complaint "Exhibit A"
[3] Criminal Court Complaint "Exhibit A"
[4] Criminal Court Complaint "Exhibit A"
[5] Criminal Court Complaint "Exhibit A"

no role in the trial or the merits of the argument before the Court. ADA Levinson, as a supervisor, stated on the record that if counsel, Andrew Stengel, had concerns with the truthfulness of an officers' testimony, that there were other avenues of redress outside the trial court.  ADA Levinson was speaking in generalities; nothing stated pertained to the case. ADA Levinson was speaking as to the proper forum of redress; which was not the trial court. Plaintiff's Counsel has in fact sought this redress by filing the suit before this Court. ADA Levinson does not speak to any specifics of the case and it is clear that his statements were general in nature; further supporting the meritless argument for deposing ADA Levinson. Upon being found not guilty, Plaintiff filed this lawsuit.

In the operative pleading, Plaintiff alleges that The City of New York and The New York City Police Department had in effect policies, practices, procedures, and customs both before and at the time of the events alleged, which operated to deprive Plaintiff of his constitutional rights. ECF 9 at ¶64. Further Plaintiff alleges that The City of New York and The New York City Police Department are liable under 42 U.S.C. §1983 because they established policies, practices, procedures, and customs that were intended to and did encourage, endorse, and reward their agents and employees for violating the constitutional rights of Plaintiff and other similarly situated persons.  At a minimum, the supervisors and the governmental units were deliberately indifferent to such constitutional violations. ECF 9 at ¶65.

## LEGAL STANDARD

Relevant to this motion, a deposition subpoena served under FRCP 45 may be quashed where it seeks information that is irrelevant to a plaintiff's claims or duplicative of other discovery; where it subjects a witness to undue burden; and where it seeks information that is privileged as work product.  FRCP 45(d)(3); FRCP 26(b)(1) and 26(b)(2)(C)(1); *In re Refco Secs. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011) ("Subpoenas issued under Rule 45 are subject to the

relevance requirement of Rule 26(b)(1)"); *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, 2003 U.S. Dist. LEXIS 23179, at *23 (S.D.N.Y. Dec. 23, 2003) ("The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings"). In considering these factors, "special weight" should be given to a witness' status as a non-party. *Cohen v. City of New York*, 2010 U.S. Dist. LEXIS 44762, at *7 (S.D.N.Y. May 6, 2010) (quotation omitted).

The work product privilege protects "the files and the mental impressions of an attorney" – including an Assistant District Attorney – as reflected "in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways." *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947); *see also Jean v. City of New York*, 2010 U.S. Dist. LEXIS 2282, at *6-7 (E.D.N.Y. Jan. 12, 2010) (in a §1983 civil suit, finding that "[n]otwithstanding that the [District Attorney] is not a party here, [the Office] has a continuing interest in the matters in dispute here that provides a sufficient basis for protecting their work product"); *Bellamy v. City of New York*, 2015 U.S. Dist. LEXIS 67366, at *6 (E.D.N.Y. May 22, 2015) (same, noting further that the rational for the work product privilege continues to exist even though "a further prosecution of plaintiff cannot be maintained").

## ARGUMENT

### I. The subpoenas seek information that is irrelevant to plaintiffs' claims.

The sole issue on which Plaintiff seeks to depose ADAs Tania Fiedorek and Jeffrey Levinson has no connection to his claims in this civil suit. Neither of the prosecutors handled the case either during its pendency or during the trial phase. As best as can been discerned from discussions, Plaintiff's Counsel seeks the depositions in an effort to learn whether, as a result of the not guilty finding, the New York County District Attorney's Office formed an opinion or believes the named police officers lied or otherwise have "adverse credibility" issues. Whether the District Attorney's

5

Office, following Plaintiff's criminal trial, assessed or determined that the police officers involved in his arrest credibly testified or whether they believed the court simply determined the evidence presented at trial did not meet the beyond a reasonable doubt standard, or some other assessment, is entirely irrelevant to the claims that bring this case before the Court. The same can be said for ADA Fiedorek, who made determinations with respect to drafting the formal charges for which Plaintiff was prosecuted. Her opinion of the reliability or credibility of the named officers is not relevant to Plaintiff's civil allegations against those officers. It is not for the prosecutor to opine of the credibility or believability of any witness, plaintiff or defendant in a civil suit. Rather, it is the job of the civil jury in this case to decide which version as between Plaintiff and the police officers is credible – in whole or in part – and then, from the events that the jury finds transpired, to draw its own conclusion as to whether Plaintiff's arrest and prosecution were supported by probable cause. To this end, the Second Circuit has specifically held that testimony from a prosecutor as to whether a police officer was credible, whether there was probable cause, or whether certain evidence strengthened or weakened the People's case is "irrelevant in virtually all cases involving malicious prosecution." *Cameron v. City of New York*, 598 F.3d 50, 61-65 (2d Cir. 2010) ("[T]he credibility of witnesses is exclusively for . . . determination by the jury, and witnesses may not opine as to the credibility of the testimony of other witnesses"); *see also Adams v. City of New York*, 993 F. Supp. 2d 306, 326 (E.D.N.Y. 2014) ("Based on Second Circuit case law, the Assistant District Attorney witnesses cannot testify about their opinion regarding the Undercover Officer's credibility, or that they determined that the information he provided to them was sufficient to establish probable cause").

## II. The Subpoena should be quashed since Plaintiff seeks privileged work product

Beyond the issue of burden, deposition questions addressed to what steps, if any, this Office took following Plaintiff's trial in relation to the credibility of these officers, would require them

6

to reveal fact and opinion work product. This Office's investigative process, the information gathered, and the subsequent decisions are all privileged. In considering these factors, "special weight" should be given to a witness' status as a non-party. *Cohen v. City of New York*, 2010 U.S. Dist. LEXIS 44762, at \*7 (S.D.N.Y. May 6, 2010) (quotation omitted). The work product privilege protects "the files and the mental impressions of an attorney" – including an Assistant District Attorney – as reflected "in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways." *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947); *see also Jean v. City of New York*, 2010 U.S. Dist. LEXIS 2282, at \*6-7 (E.D.N.Y. Jan. 12, 2010) (in a §1983 civil suit, finding that "[n]otwithstanding that the [District Attorney] is not a party here, [the Office] has a continuing interest in the matters in dispute here that provides a sufficient basis for protecting their work product"); *Bellamy v. City of New York*, 2015 U.S. Dist. LEXIS 67366, at \*6 (E.D.N.Y. May 22, 2015) (same, noting further that the rational for the work product privilege – including the protection of "an attorney's ability to formulate legal theories and prepare cases" – continues to exist even though "a further prosecution of plaintiff cannot be maintained").

There are two categories of work product, fact and opinion. Fact work product encompasses "factual material, including the result of a factual investigation." *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007). To obtain fact work product, the requesting party must show a substantial need for its production and the inability to obtain its equivalent from other sources. *Jean*, *supra*, at \*5; *see also United States v. Zhu*, 77 F. Supp. 3d 327, 330-31 (S.D.N.Y. 2014) (finding that the results of a witness interview conducted in preparation for a possible criminal case were work product and that the requesting party could "easily" ascertain any non-privileged facts from another source: the witness himself). Opinion work product encompasses the "mental impressions, conclusions, opinions, [and] legal theories" of an attorney and "will rarely, if ever be subject to disclosure. *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d at 184.

During our discussion, Plaintiff's counsel, Mr. Bell, first appeared to have no specifics as to why ADA Levinson was noticed for deposition and his relevance. It is our understanding that Plaintiff's counsel, Andrew Stengel, was the trial attorney on the criminal case and the transcript held by Plaintiff demonstrates such a relationship. During the subsequent conversation, Mr. Bell claimed he would seek to questions ADA Levinson as to whether or not he believed the police officers had credibility issues and what actions, if any were taken to add these Officers to a so-called "list" of police officers. During the conversations, I inquired into why they did not seek to first speak with either the ADA who dealt with the matter leading up to the trial or the ADA who actually tried the case. The answer stemmed back to the overarching questions of Office policies on this "list." Mr. Bell indicated that junior assistants, such as those who dealt with the matter leading up to the trial and during the trial, would not have enough information on the topic. He indicated that Plaintiff wanted to depose someone more "senior" such as ADA Levinson. Again, not only is ADA Levinson's opinion of the defendant officers' credibility not remotely relevant – or even admissible - to this matter, such questioning seeks to ferret out the legal opinions and analysis of a prosecutor. Such information constitutes protected attorney work product. To the extent questioning on these topics implicates fact work product rather than opinion work product, plaintiffs cannot show either "substantial need" – given the minimal, if any, relevance of these topics to their actual claims against the Officers or the City – nor can they show an inability to obtain the information by other means, namely, the drafting of the criminal court complaint pertaining to ADA Fiedorek or the Court transcript held by Plaintiff pertaining to the limited role of ADA Levinson.

### III. To the extent the Court finds that the prosecutors' testimony has any relevance, the subpoenas subject them to undue burden.

Even if the Court were to find that the prosecutors' testimony had any relevance to the claims pled in the complaint, that relevance is outweighed by the burden on the prosecutors to appear for a

8

deposition. ADA Fiedorek is on Family Medical Leave following the birth of her child. She is not scheduled to return until November 1, 2019 or later. ADA Levinson is the Director of Legal Training and is responsible for the legal training of the entire New York County District Attorney's Office. Specifically, throughout the month of October, he is responsible for the legal training and staff orientation of 55 new Assistant District Attorneys and Legal Fellows along with 16 additional clinical students. Throughout the remainder of the year, ADA Levinson is also responsible for the Grand Jury training and Trial Advocacy training of new Assistants and rising felony-Assistants, as well as preparing Continuing Legal Education programs for the entire Office. On top of these responsibilities, ADA Levinson is involved on a daily basis in the development of new policies and training programs that will be implemented by this Office throughout the Fall and continuing into the new year in response to expansive statutory amendments to the discovery and speedy trial obligations of prosecutor's offices throughout the State and amendments to the conditions of pre-trial detention status of all defendants, all of which will go into effect on January 1, 2020. *See* CPL Article 245.

To meaningfully prepare for a deposition, the witnesses would have to take time away from their present personal and work obligations to attempt to educate themselves on events that occurred close to two years ago, on a case they did not personally handle during the pendency of the prosecution or at trial. Given the ready availability from other sources of all information of conceivable relevance to this lawsuit, compelling these non-party prosecutors to prepare for, and sit for, depositions is unduly burdensome. *Cf. Filippi v. Elmont Union Free Sch. Dist. Bd. Of Educ.*, 2011 U.S. Dist. LEXIS 102310, at *4 (E.D.N.Y. Sept. 12, 2011) (even where "the burden of compliance is not onerous" – which the District Attorney's Office respectfully submits is very onerous, here – a subpoena that pursues material of "little apparent or likely relevance" is "likely to be quashed as unreasonable," particularly where the demand is made to a non-party). Of note, the Plaintiff through his counsel has access to the entire trial transcript, criminal court complaint and has the ability to depose the officers, such that the

9

officers' version of events has been and continues to be readily available to the parties of this civil action.

## **CONCLUSION**

For the foregoing reasons, the Court should quash the deposition subpoenas addressed to ADAs Fiedorek and Levinson.

Dated:   New York, New York
         October 1, 2019

>                                CYRUS R. VANCE, JR.
>                                District Attorney of New York County
>                                *Attorney for ADAs Fiedorek and Levinson*
>                                One Hogan Place
>                                New York, New York 10013
>                                (212) 335-9000
>
>                         By:    _____/s_____
>                                Lauren Angelo
>                                Assistant District Attorney