UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

MYTAYARI KEYES,
                             Plaintiff,

            -v-

THE CITY OF NEW YORK, *et al.*,
                            Defendants.

18-CV-4712 (JPO)

OPINION AND ORDER

---------------------------------------------------------------

J. PAUL OETKEN, District Judge:

      On May 29, 2018, Plaintiff Mytayari Keyes brought this action under 42 U.S.C. § 1983 against Defendants the City of New York ("the City") and the New York City Police Department ("NYPD") Officers Manuel Silva, Peter Cassidy, and Michael Looney, in relation to Keyes's March 1, 2017 arrest and subsequent prosecution for forcible touching and sexual abuse. Keyes claims that Defendants subjected him to an unlawful false arrest and malicious prosecution.[1] On December 9, 2020, Defendants moved for summary judgment. For the reasons that follow, the motion is granted.

**I.    Background**

      On March 1, 2017, Defendants Silva, Cassidy, and Looney were patrolling the Midtown North Precinct on behalf of that Precinct's Anti-Crime Unit. (Dkt. No. 72-1 ¶¶ 2–6.) Defendants Silva, Cassidy, and Looney were spread out in Times Square, watching for crimes in progress or about to take place. (Dkt. No. 72-1 ¶¶ 9, 11–14.) The officers were in plain clothes, so as to blend in with members of the public. (Dkt. No. 72-1 ¶¶ 7–8.)

---

[1] In his complaint, Keyes also lists a fair trial claim, a *Monell* claim, and various state law claims. In response to Defendants' motion for summary judgment, Keyes abandoned those claims. (Dkt. No. 72 at 1.)

Defendant Cassidy first observed Keyes from behind, in the vicinity of 44th Street. (Dkt. No. 72-1 ¶¶ 16–17.) Defendant Cassidy testified that he began to follow Keyes because he observed Keyes "looking down towards people's waistlines" and believed that Keyes "was possibly looking at people's bags for a possible open bag." (Dkt. No. 65-4 at 23:3–9.) Defendant Cassidy recalled following Keyes, who hovered between 44th Street and 43rd Street, for roughly 10 minutes. (Dkt. No. 65-4 at 26:18–19, 29:20–25, 30:2–3.) During that time, Defendant Cassidy saw Keyes "approaching multiple women" but could not, from his vantage point, see Keyes touching any of the women or reaching for their bags. (Dkt. No. 65-4 at 25:7–11, 25:16–23.) After following Keyes for 10 minutes, Defendant Cassidy crossed the street "in case [Keyes had] realized that [Defendant Cassidy] was actually watching him" and "to watch [Keyes] from a further angle." (Dkt. No. 65-4 at 27:15–20.) Defendant Cassidy testified that he then saw Keyes "approach a woman [("Alleged Victim 1")] from behind very closely" and "raise his right hand and rub . . . the woman's buttocks . . . in an up and down motion." (Dkt. No. 65-4 at 39:9–13.) Defendant Cassidy approximated that the interaction with Alleged Victim 1 lasted between one and three seconds. (Dkt. No. 65-4 at 43:21–25.)

Separately, Defendant Silva observed Keyes. Defendant Silva testified that Keyes drew his attention because "[h]is hands were close to [women's] handbags." (Dkt. No. 65-5 at 28:10–12.) He estimated that he followed Keyes from several feet away for half an hour. (Dkt. No. 65-5 at 22:7–13.) Defendant Silva recalled that he witnessed Keyes touch between seven and nine women, including Alleged Victim 1. (Dkt. No. 65-5 at 18:13–15.) He described that Keyes "would just touch [a woman] and move over, get close, but that [the touch] didn't last too long." (Dkt. No. 65-5 at 18:8–10.) Defendant Silva suggested that Keyes was fairly subtle, in that not

all women reacted to his touch and his touch could be perceived as an accident. (Dkt. No. 65-5 at 19:18–20.)

Defendant Looney, the supervising officer on patrol, also took note of Keyes. (Dkt. No. 65-6 at 8:7–8, 17:14–24.) Defendant Looney recalled that Keyes "would get behind women unnecessarily close" and "follow them in public." (*Id*.) Defendant Looney testified that he was trailing approximately 10-to-15 feet behind Defendant Silva when Defendant Silva "made a gesture and . . . made eye contact," to indicate that Keyes had done something inappropriate to Alleged Victim 1. (Dkt. No. 65-6 at 23:20–25, 24:23–24.) Defendant Silva gestured not only to Defendant Looney but also to Defendant Cassidy. (Dkt. No. 65-5 at 34:11–15.)

After Keyes supposedly touched Alleged Victim 1, Defendant Cassidy joined Defendant Silva, and the two arrested Keyes at 44th Street and Seventh Avenue. (Dkt. No. 72-1 ¶ 52.) As they were handling the arrest, Defendant Looney approached Alleged Victim 1. (Dkt. No. 72-1 ¶ 55.) Defendant Looney informed Alleged Victim 1 that he was an NYPD officer and that she was the victim of a crime. (Dkt. No. 72-1 ¶ 56.) Alleged Victim 1 said that she "didn't feel anything," refused to speak with Defendant Looney any further, and walked away. (Dkt. No. 65-6 at 27:5–10; Dkt. No. 71-2 at 4.) Defendant Looney estimated that he interacted with Alleged Victim 1 for no more than 15 seconds. (Dkt. No. 65-6 at 28:20–22.)

From a distance, Keyes saw Defendant Looney's interaction with Alleged Victim 1. Before being accused of any specific wrongdoing, Keyes said, "She did not say that I did this. . . . Doesn't she have to press charges on me? . . . She's shaking her head. She said I didn't do anything to her." (Dkt. No. 71-2 at 1.) Defendants Cassidy and Silva brushed off Keyes's comments and asked him, "How long you been out here for? Because we just saw you now." (*Id*.) Keyes refused to answer, both requesting a lawyer and insisting that it was "not fair" that

3

he was being arrested when Alleged Victim 1 would not speak against him. (Dkt. No. 71-2 at 1–2.) Keyes was then brought to the Midtown North station for processing. (Dkt. No. 72-1 ¶ 59.) Defendant Cassidy handled Keyes's paperwork, and Defendant Silva relayed to Defendant Cassidy that he had observed Keyes touching at least one other woman, Alleged Victim 2, in Times Square. (Dkt. No. 65-4 at 53:21–25, 54:1–19; Dkt. No. 65-5 at 42:18–25, 43:2–10.)

On March 2, 2017, Defendant Cassidy swore out a criminal complaint against Keyes that charged him with one count of forcible touching and one count of sexual abuse in the third degree. (Dkt. No. 72-1 ¶ 61.) The complaint covered Defendant Cassidy's own observation of Keyes with Alleged Victim 1, as well as the information about Alleged Victim 2 that Defendant Silva had conveyed to Defendant Cassidy. (Dkt. No. 65-8.) On March 10, 2017, Defendant Silva prepared an affidavit regarding Alleged Victim 2 in support of the complaint. (Dkt. No. 65-9.) Keyes proceeded to trial in the Criminal Court of the City of New York, County of New York, on January 31, 2018. (Dkt. No. 72-1 ¶ 64.) The judge determined that Defendants had probable cause for the prosecution but acquitted Keyes of the charges against him. (Dkt. No. 72-1 ¶¶ 64–65.)

On February 28, 2018, Keyes filed a Notice of Claim outlining, *inter alia*, his false arrest and malicious prosecution claims against Defendants. (Dkt. No. 72-1 ¶ 67.) Keyes filed the complaint in this Court three months later, on May 29, 2018. (Dkt. No. 1.) Now pending before the Court is Defendants' December 9, 2020 motion for summary judgment.

## II.     Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "On summary judgment, the party bearing the

burden of proof at trial must provide evidence on each element of its claim or defense." *Cohen Lans LLP v. Naseman*, No. 14-cv-4045, 2017 WL 477775, at *3 (S.D.N.Y. Feb. 3, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12-cv-5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014). The Court must view all evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in its favor," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks and citations omitted).

### III.  Discussion

Defendants seek summary judgment on the basis that Defendants had probable cause to arrest and prosecute Keyes. As Defendants argue, "[p]robable cause is a complete defense to an action for false arrest brought under New York law or § 1983." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (internal quotation marks and citation omitted). Likewise, "probable cause is a complete defense to a claim of malicious prosecution." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003); *accord Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (referring to probable cause in the context of a malicious prosecution claim as "continuing probable cause").

Probable cause exists when an officer has "knowledge or reasonably trustworthy information sufficient to warrant . . . the belief that an offense had been committed by the person [] arrested." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and citation omitted). This belief need not be "correct or more likely true than false," though it

5

should be reached in good faith. *Mara v. Rilling*, 921 F.3d 48, 69 (2d Cir. 2019) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)). An officer's belief that a person committed an offense can be reasonably formed based on the observations of a fellow officer. *Panetta*, 460 F.3d at 395. In general, neither the inaccuracy of such observations nor an officer's failure to investigate a person's "protestations of innocence" vitiates probable cause. *Id*. at 395–96. It bears mention that "the standard for establishing probable cause is well below that for establishing guilt beyond a reasonable doubt." *Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124, 128 (2d Cir. 2009).

Here, Defendants had probable cause to arrest Keyes for forcible touching and sexual abuse in the third degree. Under New York Penal Law ("NYPL") § 130.52, forcible touching is defined as "intentionally, and for no legitimate purpose, forcibly touch[ing] the sexual or other intimate parts of another person for the purpose of . . . gratifying the actor's sexual desire." And under NYPL § 130.55, sexual abuse in the third degree is "subject[ing] another person to sexual contact without the latter's consent." Defendants either themselves observed or relied on their fellow officers' observations of Keyes stroking women's backsides. Their observations were bolstered by Keyes's seemingly knowing response to his arrest: "She did not say that I did this. . . . Doesn't she have to press charges on me?" (Dkt. No. 71-2 at 1.) Defendants' observations and Keyes's response would be enough to lead "a person of reasonable caution" to believe that Keyes had subjected women to non-consensual sexual contact, in violation of NYPL §§ 130.52 and 130.55. *Panetta*, 460 F.3d at 395 (internal quotation marks and citation omitted); *see also People v. Watson*, 147 N.Y.S.3d 866 (Table), 2021 WL 2697233, at *1 (1st Dep't 2021) ("[I]t can be reasonably inferred that defendant," who had repeatedly rubbed a woman's backside, "touched the victim . . . to gratify his sexual desires." (citations omitted)).

Keyes's arguments to the contrary are unpersuasive. In contesting whether Defendants had probable cause to arrest him, Keyes identifies three supposed disputes of material fact. First, he calls into question whether Defendants tailed him for at least 10 minutes, given one officer's statement during the arrest that the officers "just saw [him] now." (Dkt. No. 72 at 4.) But Keyes reads too much into the statement, which conveys only that the officers witnessed Keyes's interaction with Alleged Victim 1. The statement does not clearly indicate when Defendants first noticed Keyes and does not preclude the possibility that Defendant Silva witnessed Keyes touching Alleged Victim 2 earlier. Moreover, even if Defendants had observed nothing other than Keyes's touching of Alleged Victim 1, they would still have probable cause to arrest Keyes for a violation of NYPL §§ 130.52 and 130.55. *See Jimenez v. City of New Rochelle*, No. 19-cv-2525, 2021 WL 1178090, at *5 (S.D.N.Y. Mar. 29, 2021) ("As long as there was probable cause to arrest the plaintiff for some offense, a false arrest claim will fail.").

Second, Keyes argues that he "did not touch the buttocks of any woman." (Dkt. No. 72-1 *passim*.) This may be true — perhaps Keyes brought his hand near to but did not actually touch Alleged Victims 1 and 2 — but it does not negate the possibility that Defendants believed they saw Keyes touch Alleged Victims 1 and 2. Defendants' good-faith belief that they saw Keyes engage in non-consensual sexual conduct suffices to create probable cause for his arrest. *See Liverpool v. Cleveland*, 848 F. App'x 468, 469 (2021) ("Because [the defendant] observed the concealed hand movement, even if he misperceived that movement as a lewd act, both he and the arresting officer . . . had probable cause to arrest [the plaintiff].").

Third, Keyes contends that he, Defendant Cassidy, and Defendant Silva all "testified to [] separate versions of the events leading up to [his] arrest." (Dkt. No. 72 at 2–3.) Although Keyes acknowledged that he "wasn't rushing" through Times Square, he recalled being in the area for

7

"roughly[] ten minutes, fifteen minutes," not the half hour that Defendant Silva recalled.  (Dkt. No. 65-3 at 82:1–4.)  Keyes testified that he spent this time walking north from "maybe 41st" Street (Dkt. No. 65-3 at 72:4–7, 84:23–25), despite Defendant Cassidy's recollection that he first noticed Keyes when he was walking south (Dkt. No. 65-4 at 22:13–15).  Finally, Keyes points out various discrepancies as to which street and which side of the street Defendants recalled themselves and their fellow officers being on; Defendant Silva, for instance, testified that Keyes walked up to 49th Street, while Defendant Cassidy testified that Keyes stayed between 43rd and 44th Streets before being arrested in that area.  (Dkt. No. 72 at 3.)  Keyes is correct that the accounts are inconsistent on these issues.  But these are minor inconsistencies, none of which pertains to whether Defendants were close enough to observe Keyes and believe, mistakenly or not, that he had touched Alleged Victims 1 and 2.  In other words, Keyes fails to identify a genuine dispute as to any *material* fact regarding the presence or absence of probable cause to arrest him.  See *Waddlington v. City of New York*, 971 F. Supp. 2d 286, 293–94 (E.D.N.Y. 2013) ("Such inconsistencies . . . in no way undermine [the defendants'] belief that Plaintiff had committed an offense under New York law and Defendants are entitled to summary judgment").

     Having concluded that Defendants had probable cause to arrest Keyes, the Court also concludes that Defendants had probable cause to prosecute him.  See *DiMascio v. City of Albany*, 205 F.3d 1322 (Table), 2000 WL 232053, at *2 (2d Cir. 2000) (We find — in light of our holding that the officers had, for the purposes of this civil action, probable cause to arrest appellant — no evidence that appellees lacked probable cause to initiate the criminal proceedings against appellant.").  Probable cause to arrest gives rise to probable cause to prosecute unless "the probable cause that existed at the time of [a defendant's] arrest had been nullified by information establishing [the defendant's] innocence." *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d

8

Cir. 2003); *Betts*, 751 F.3d at 82.  Keyes identifies no evidence that would have established his innocence between the time of his arrest and the time of his prosecution.  Furthermore, in assessing the existence of probable cause to prosecute, the Court may rely on the state court's determination of probable cause unless that determination was procured through "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."  *Dawson v. Snow*, 356 F. App'x 526, 529 (2d Cir. 2009) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82–83 (1983)).  Keyes, who does little more than accuse Defendants of lying about what they observed, has not marshaled evidence that Defendants committed fraud on the court or otherwise acted bad faith.  *See Watson v. Grady*, No. 09-cv-3055, 2015 WL 2168189, at *15 (S.D.N.Y. May 7, 2015) (explaining that a plaintiff cannot baldly assert that officers perjured themselves).  It follows that Defendants had probable cause not only to arrest Keyes but also to prosecute him.  Summary judgment is therefore appropriate on the false arrest and malicious prosecution claims.

**IV.     Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.  The Clerk of Court is directed to close the motion at Docket Number 63 and to close this case.

SO ORDERED.

Dated:  August 24, 2021
        New York, New York

_____
J. PAUL OETKEN
United States District Judge

9